**Elinor KINLOUGH, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health & Human Resources, Defendant.**

**Civ. A. No. 81–2184.**

United States District Court, D. Kansas.

Feb. 19, 1982.

Michael L. Waite, Leavenworth, Kan., for plaintiff.

Jim J. Marquez, U.S. Atty., Janice Miller Karlin, Asst. U.S. Atty., D. Kan., Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) [hereinafter the Act], for judicial review of a final decision of the Secretary of Health & Human Services. Plaintiff in this action is seeking benefits as a disabled widow under the applicable provisions of the Act. After a hearing before an Administrative Law Judge [hereinafter ALJ], plaintiff's application for benefits was denied because she was not under a disability as defined in § 223(d) of the Act, as amended, at any time on or before September 30, 1977. This date was the last day of a period of time set by the Act during which the widow must have become disabled in order to be eligible for widow's benefits.

Upon review of the record, the Appeals Council affirmed the ALJ's decision. Plaintiff then filed this action for review of the decision of the Appeals Council, which stands as the final decision of the Secretary.

### I

Plaintiff was born in Missouri on July 22, 1923. She has a high school education and attended college for one year. She testified at the hearing before the ALJ that she had training in typing and shorthand, but that her skills had deteriorated because of nonuse. She was married to Donald Kinlough in Taiwan, Republic of China, on October

27, 1958, while he was in the military. They lived together as man and wife until his death on September 9, 1970. She has not remarried, and at this time she lives alone in Leavenworth, Kansas. She currently receives the sum of Six Hundred Sixty Dollars ($660) every month from her husband's pension and an insurance policy.

Plaintiff testified that she worked continuously from 1972 to 1977 at the NCO Club at Fort Leavenworth. She supervised bingo games, sold tickets, and did some bookkeeping and clerical work. Her work was part-time, two nights a week, every week. Early in 1977, plaintiff began to suffer from pain in her knees and right wrist, and finally quit her job at the NCO Club in March, 1977.

Plaintiff has a long history of painful medical problems with her knees and wrist. As is set out more fully below, plaintiff was last insured under the Act on September 30, 1977, under her deceased husband's account with respect to disabled widow's benefits. Therefore, all medical evidence pertaining to her disability must be evaluated within the period of time commencing with her husband's death on September 9, 1970, and the date her eligibility for widow's benefits expired, September 30, 1977. 42 U.S.C. § 402(e)(5).

The record reveals that plaintiff had problems with her knees as early as 1962. At the hearing, plaintiff testified that her first knee operations were in 1962 and 1964. In these operations, cartilage was removed from both knees because they had been swelling and were painful.

On April 28, 1970, she experienced light chest pains, and was treated for intercostal nerve pain by having the nerve blocked. She was admitted to Munson Army Hospital from January 20, 1977, to January 27, 1977, for gradual onset of pain, swelling and locking of her right knee. Her medical records indicate that she had been suffering these problems intermittently over the prior seven years. On March 15, 1977, a prosthetic kneecap was fitted to her right knee.

Plaintiff was admitted to Fitzsimmons Army Medical Center from February 16, 1978, through April 8, 1978, for treatment of right wrist pain and associated tender areas in her right arm. She had apparently been experiencing pain in her right arm during the preceding seven years. Exploratory surgery was performed, and a neuroma was excised.

Plaintiff was readmitted to Munson Army Hospital from November 13, 1978, to November 29, 1978, for treatment of chronic cecal volvulus, an ailment she had suffered with particular severity in 1974 and 1975. A portion of the bowel was removed at this time.

On August 14, 1979, plaintiff's right knee was totally removed, and a plastic and metal prosthetic device was cemented into place. On September 4, 1979, surgery was performed on her left knee. Plaintiff testified that full replacement of her left knee is likely in the near future. In October, 1979, plaintiff was again hospitalized for an infection and inflammation in her right knee, which required continuous antibiotic treatment for the next two years. On March 27, 1980, x-rays showed marked degenerative, arthritic changes in the left knee, although the right wrist seemed normal. In addition to the foregoing, plaintiff suffers from diabetes mellitus, chronic obstructive pulmonary disease secondary to chronic smoking, obesity, and chronic urinary retention associated with incomplete emptying.

## II

Jurisdiction in this case is based on 42 U.S.C. § 405(g), which allows the Court to review final orders of the Secretary. The function of judicial review under § 405(g) is to determine whether or not the factual findings of the Secretary are based upon substantial evidence in the record. *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970). Findings which are supported by substantial evidence are conclusive on the reviewing court. 42 U.S.C. § 405(g). The burden of proving disability is on the claimant, but the Secretary has a duty to ensure his actions are fair and thorough. *Tillman v. Weinberger*, 398 F.Supp. 1124 (N.D.Ind. 1975).

Disabled widow's insurance benefits are provided in § 402(e) as follows:

"(e)(1) The widow . . . of an individual who died a fully insured individual, if such widow . . .—

"(A) is not married,

"(B)(i) has attained age 60, or (ii) has attained age 50 but has not attained age 60 and is under a disability (as defined in section 423(d) of this title) which began before the end of the period specified in paragraph (5),

\*    \*    \*    \*    \*    \*

shall be entitled to a widow's insurance benefit . . . "

"Disability" is defined in § 423(d)(1) as:

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . "

\*    \*    \*    \*    \*    \*

"(2) For purposes of paragraph (1)(A)—

\*    \*    \*    \*    \*    \*

"(B) A widow . . . shall not be determined to be under a disability (for purposes of section 402(e) . . .) unless . . . her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The regulations referred to in § 423(d)(2)(B) are found at 20 C.F.R. §§ 404.1515 to –.1539. In addition, in Subpart P, Appendix 1, is found a listing of impairments. If a person applying for widow's benefits has an impairment or combination of impairments listed in this appendix, or if that person has impairments not listed but which are determined to be medically equivalent to a listed impairment, then that person shall be determined to be under a disability and entitled to widow's benefits.

A widow is entitled to insurance benefits only if she is under a disability which began before the end of the time described in the Act. Section 402(e)(5) provides, in part, that:

"The period . . . in the case of any widow . . . is the period beginning with whichever of the following is the latest:

"(A) the month in which occurred the death of the fully insured individual referred to in paragraph (1) on whose wages and self-employment income her benefits are or would be based, . . .

\*    \*    \*    \*    \*    \*

and ending with the month before the month in which she attains age 60, or, if earlier, with the close of the eighty-fourth month following the month with which such period began."

The Act provides a different method for determining the disability of a widow claiming benefits than for determining the disability of a wage earner. *Gillock v. Richardson*, 322 F.Supp. 354 (D.Kan.1970). In actions such as the one presently before the Court, the Secretary need not consider the age, education or work experience of the claimant, nor the availability of suitable employment in the claimant's locality. The only factual questions determinative of plaintiff's rights under the Act are whether or not her physical impairments meet the severity tests prescribed by the Secretary in the regulations. *Gillock v. Richardson, supra.* Furthermore, it is the duty of the ALJ to pass upon the weight and credibility of conflicting evidence and medical opinions. *Adams v. Richardson*, 336 F.Supp. 983 (D.Kan.1972).

### III

On appeal, plaintiff asserts that the ALJ committed an error of law in requiring a heavier burden to be met by plaintiff than that prescribed by law. It is the contention of plaintiff that the ALJ required her to prove that her medical condition precluded her from engaging in any gainful activity. Plaintiff contends that this is contrary to the law. Plaintiff quotes 20 C.F.R. 404.-1515 (1980), which states:

"A widow or widower shall, for purposes of Section 202(e) or (f) of the Act, be determined to be under a disability only if, in the absence of evidence that he or she is engaged in substantial gainful activity—

"(a) His or her impairment or impairments meet the duration requirement of § 404.1501 and are listed in the appendix to this subpart; or

"(b) His or her impairment or impairments are not listed in the appendix to this subpart, but singly or in combination meet the duration requirement in § 404.-1501 and are determined by the Secretary to be medically the equivalent of a listed impairment.

"Such an individual shall not be found under a disability, however, where he or she is engaged in substantial gainful activity."

■ Plaintiff argues that because this regulation states that a widow engaged in substantial gainful activity cannot be found to be under a disability, it must therefore be true that a widow *not* engaged in substantial gainful activity due to an impairment must be considered to be suffering from a disability. It follows from this that the proper test of disability for a claimant seeking widow's benefits on the basis of her spouse's record as a wage earner must show that she suffers from an impairment deemed by the Secretary to preclude her from engaging in any gainful activity. Furthermore, it is clear that Congress intended to place a heavier burden on one seeking widow's benefits under the Act than on one seeking wage earner benefits or childhood disability benefits. *See Gillock*

*v. Richardson*, 322 F.Supp. at 356 (D.Kan. 1970). The Court therefore can find no error in the standard of proof used by the ALJ.

■ Plaintiff further argues that the ALJ erroneously misinterpreted the physical evidence and testimony presented at the hearing. Plaintiff points out that Dr. Hill's report shows that plaintiff had suffered pain, swelling and locking of her right knee since 1962, and that she had been admitted to Munson Army Hospital on January 20, 1977, for treatment. The record proves that in March, 1977, plaintiff had a prosthetic right knee implanted. In plaintiff's characterization, beginning in early 1977 and continuing to the present date, plaintiff has undergone several serious operations to her knee, has suffered from severe pain, and has been unable to engage in substantial gainful activities.

The record contains testimony from plaintiff which evidences her inability to drive her own car, to walk or stand for long periods of time, or to work on a regular basis at even the most undemanding occupations. Plaintiff argues that the evidence before the ALJ was sufficient to bring her within one of the impairments listed in 20 C.F.R., Subpart (P), Appendix 1.03, which states:

"1.03. *Arthritis of a major weight-bearing joint* (due to any cause): With limitation of motion and enlargement or effusion in the affected joint, as well as a history of joint pain and stiffness. With:

\*      \*      \*      \*      \*      \*

"(C) Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset."

However, the ALJ had before him the record of an examination of plaintiff by Dr. Grisolia, in 1979, after plaintiff's second surgery on her right knee. It is to be noted that this examination occurred nearly two and one-half years after plaintiff's period of eligibility had passed, and after her condition had markedly worsened from that date. Even though plaintiff was more severely

impaired in April, 1980, than she had been in September, 1977, Dr. Grisolia nevertheless was of the opinion that her impairment still did not rise to the level required by the Social Security regulations. (Tr. 97.)

Furthermore, upon her request for reconsideration, dated April 29, 1980, plaintiff's medical records were re-examined by a physician and disability examiner in a state agency which works with the Social Security Administration in making disability determinations, and the same conclusion was reached.

Therefore, there is substantial evidence supporting the conclusions of the ALJ. Where there is substantial evidence supporting the decision of the ALJ, his decision must be affirmed on appeal. 42 U.S.C. § 405(g).

Plaintiff argues that the defendant Secretary of Health & Human Services has made a too-narrow and too-restrictive application of the law in this case. Plaintiff argues that the Secretary is obligated to view the evidence in the light most favorable to plaintiff. *Labee v. Cohen*, 408 F.2d 998 (5th Cir. 1969). Further, that the Act was intended to be liberally applied so as to effectuate its purpose, and was intended to be inclusive, rather than exclusive, in application. *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

The question before the Court only indirectly involves these principles, however. The question before the Court is whether there was substantial evidence in the record to support the finding that plaintiff did not suffer from an impairment listed in the regulations, or their medical equivalent, on or before September 30, 1977. Plaintiff's medical records might lead one to conclude that she was not capable of any gainful work of any kind, but the record is devoid of an opinion by a physician or other qualified person that her disability met the approved tests of the Secretary. It is the duty of the ALJ to pass upon the weight and credibility of conflicting evidence. Plaintiff provided no expert opinion to the effect that her impairments are of an equal severity with any of the impairments listed by the Secretary in the regulations.

The regulations require the ALJ to base his decision upon medical evidence, including a medical judgment furnished by a physician, on the question of medical equivalence. The Court has exhaustively examined the medical records, reports and opinions relative to plaintiff's impairments, and, in view of the applicable statutes and regulations, the Court concludes that the final decision of the Secretary is amply supported by substantial evidence.

Therefore, the Court concludes that there was substantial evidence to support the ALJ's decision in this case. There was substantial evidence to support his determination that plaintiff did not suffer from an impairment or combination of impairments of the required severity on or before September 30, 1977, the last date on which she was covered for purposes of widow's benefits.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment is hereby granted, and plaintiff's motion for summary judgment is hereby denied.